[Cite as *Homes v. Guess*, 2018-Ohio-2691.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| BONNIE L. HOLMES, ET AL. | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiffs-Appellees | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ROY GUESS, ET AL. | : | Case No. 2017CA00201 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 2016CV00994

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      July 9, 2018

APPEARANCES:

For Plaintiffs-Appellees      For Defendants-Appellants

ROBERT E. SOLES, JR.      ALEX ROBERTSON
KARA DODSON      2210 South Union Avenue
6545 Market Avneue North      Alliance, OH  44601
North Canton, OH  44721

*Wise, Earle, J.*

{¶ 1}   Defendants-Appellants, Roy and Ruth Guess and Phillip and Angela Guess, appeal the September 20, 2017 decision of the Court of Common Pleas of Stark County, Ohio, granting judgment in favor of Plaintiffs-Appellees, Bonnie and Bethany Holmes.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On November 1, 2011, appellants Roy and Ruth purchased a property in Maximo, Ohio.  Appellants Phillip and Angela moved into the property in April 2012. Appellants Roy and Ruth had purchased the property from the Estate of Betty Jean Shea. Ms. Shea had owned the property from 1955 until her death in 2010.

{¶ 3}   On April 21, 2015, appellee Bonnie purchased a property adjacent to the Guess property.  Appellee Bethany moved into the property in May 2015.  Appellee Bonnie had purchased the property from U.S. Bank.  U.S. Bank acquired the property through a foreclosure action against John and Melanie Baker in December 2014.  The Bakers had purchased the property from John and Mary Lou Hoskins in July 2004.  The Hoskins purchased the property in May 1983.

{¶ 4}   The boundary line between the two properties is comprised of the eastern edge of the Holmes property and the western edge of the Guess property.  Because the Holmeses wanted to build a fence along the boundary line, a survey was conducted.  The survey revealed the observed property line was not the true property line; portions of the Holmes' house, roof overhang, flower bed, shed, down spouting, and leach beds were located on the Guess property.  As a result, on April 29, 2016, appellees filed a complaint against appellants for adverse possession or in the alternative, a prescriptive easement,

seeking a declaration that appellee Bonnie is the fee simple owner of approximately eight feet of the western portion of the Guess property. Appellees also made claims for private and public nuisance, and sought injunctive relief.

{¶ 5} Appellants Roy and Ruth counterclaimed, seeking quiet title and ejectment and alleging frivolous conduct.

{¶ 6} A bench trial before a magistrate was held on March 17, 2017. By decision filed April 13, 2017, the magistrate found in favor of appellees. The magistrate found appellee Bonnie established adverse possession over the "disputed strip" and established a prescriptive easement regarding a downspout, and was entitled to $295.00 in damages from appellant Phillip. Appellants filed objections. By judgment entry filed September 20, 2017, the trial court overruled the objections and approved, confirmed, and adopted the magistrate's decision.

{¶ 7} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶ 8} "THE COURT IN ITS JUDGMENT ENTRY OF SEPTEMBER 20, 2017, ERRED IN AWARDING TO PLAINTIFF THE REAL ESTATE DESCRIBED IN ITS ENTRY UNDER PLAINTIFF'S CLAIM OF ADVERSE POSSESSION FOR THE REASON THAT PLAINTIFF FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT PLAINTIFF'S POSSESSION WAS EXCLUSIVE AND PLAINTIFF'S USE WAS CONTINUOUS FOR A PERIOD OF TWENTY-ONE YEARS."

II

{¶ 9}   "THE COURT IN ITS JUDGMENT ENTRY OF SEPTEMBER 20, 2017 ERRED IN AWARDING PLAINTIFF THE REAL ESTATE DESCRIBED IN SAID ENTRY UNDER PLAINTIFF'S CLAIM OF ADVERSE POSSESSION FOR THE REASON THAT PLAINTIFF FAILED TO PROVIDE BY CLEAR AND CONVINCING EVIDENCE THAT PLAINTIFF HAD ADVERSELY POSSESSED ALL PORTIONS OF THE REAL ESTATE AWARDED BY THE TRIAL COURT."

III

{¶ 10} "THE COURT IN ITS JUDGMENT ENTRY OF SEPTEMBER 20, 2017 ERRED IN AWARDING PLAINTIFF THE REAL ESTATE DESCRIBED IN THE ENTRY UNDER PLAINTIFF'S CLAIM OF ADVERSE POSSESSION AS PLAINTIFF FAILED TO PROVIDE PROOF BY CLEAR AND CONVINCING EVIDENCE OF THE EXACT BOUNDARIES OF HER CLAIM IN CONFORMITY WITH O.R.C. 315.251(A)."

I, II, III

{¶ 11} In their three assignments of error, appellants claim the trial court erred in awarding appellee Bonnie the disputed strip under the doctrine of adverse possession. Specifically, appellants claim appellee Bonnie failed to show by clear and convincing evidence that her possession was exclusive and continuous for a period of twenty-one years and she adversely possessed all portions of the real estate awarded to her, and she failed to provide proof of the exact boundaries of her claim pursuant to R.C. 315.251(A).  We disagree.

{¶ 12} "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse

use for a period of twenty-one years." *Grace v. Koch,* 81 Ohio St.3d 577, 1998-Ohio-607, 692 N.E.2d 1009, syllabus. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477. Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 13} As succinctly explained by this court in *McKenna v. Boyce,* 5th Dist. Muskingum No. CT2012-0014, 2012-Ohio-5163, ¶ 37-40:

> In order for possession to be considered open, "the use of the disputed property must be without attempted concealment. * * * To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner * * * [or] so patent that the true owner of the property could not be deceived as to the property's use." *Kaufman v. Geisken Enterprises, Ltd.,* 3rd Dist. No. 12-02-04, 2003-Ohio-1027, ¶ 31.
>
> In order for possession to be considered "hostile", the Ohio Supreme Court has stated that any use of the land inconsistent with the rights of the

titleholder is adverse or hostile. *Kimball v. Anderson,* 125 Ohio St. 241, 244, 181 N.E. 17 (1932).

In order for use to be considered continuous and exclusive, " '[u]se of the property does not have to be exclusive of all individuals. Rather, it must be exclusive of the true owner entering onto the land and asserting his right to possession. It must also be exclusive of third persons entering the land under their own claim of title, or claiming to have permission to be on the premises from the true title holder. If the title holder enters onto the land without asserting, by word or act, any right of ownership or possession, his presence on the land does not amount to an actual possession, and the possession may properly be attributed to the party who is on the land exercising or claiming exclusive control thereof. It is not necessary that all persons be excluded from entering upon and using the premises.' " *Kaufman,* supra, at ¶ 39, quoting *Walls v. Billingsley,* 3rd Dist. No. 1-92-11, 1992 WL 198131 (Aug. 18, 1992), citing 4 Tiffany, Real Property (1975) 736, Section 1141.

In order to establish the necessary twenty-one year period, a party may add to their own term of adverse use any period of adverse use by prior succeeding owners in privity with one another. *Zipf v. Dalgarn,* 114 Ohio St. 291, 151 N.E. 174, syllabus (1926).

{¶ 14} In the case sub judice, the magistrate heard testimony from six witnesses, each appellee and appellee Bonnie's husband, appellant Phillip, a professional land

surveyor, and a longtime backyard adjoining neighbor of the properties in question. The magistrate made extensive and lengthy findings of fact and concluded the following in part:

9. The evidence demonstrates that as far back as 1969, the owners of the Holmes Property treated the Disputed Strip as their own, and the owners of the Guess Property made no attempt to claim ownership over the Disputed Strip until this dispute arose in 2016.

10. The use of the Disputed Strip by the various owners of the Holmes Property was open, with no attempt of concealment, and was visible to the owners of the Guess Property as well as those residing in the neighborhood in several respects[.]

* * *

11. The Magistrate likewise concludes that the use of the Disputed Strip was notorious. There was no question as to anyone who observed the properties that the Disputed Strip was being used by the owners of the Holmes Property.

12. Defendants have attempted to argue that the adverse use of the Disputed Strip was not continuous because there was [a] 20 month period where no one resided in the home on the Holmes Property and because Phillip Guess testified he mowed the Disputed Strip several times during that period.

13. The Magistrate does not agree. Initially, the Magistrate found Phillip Guess's testimony to not be credible. Even assuming, *arguendo,* that the Magistrate did credit his testimony that he mowed the Disputed Strip 12 times, the Magistrate would conclude that the mere act of mowing the Disputed Strip a few times-without more-is not sufficient to assert, by word or act, any right of ownership or possession over the Disputed Strip.

14. Additionally, even though no one was physically residing in the house on the Holmes Property for 20 months, the Magistrate finds that the owners of the Holmes Property were still continuously using the Disputed Strip through the encroachments of the home, brick planter, shed, and downspouts. Additionally, the owners of the Holmes Property were maintaining the Disputed Strip by mowing. This is sufficient to constitute continuous use.

15. The Magistrate likewise concludes that the use was continuous for a period in excess of 21 years. The encroachments of the house, roofline, and brick planter were present since at least 1969. The Disputed Strip was maintained through mowing and other lawn care since at least 1969. The Disputed Strip was used by the owners of the Holmes Property for recreational use since at least 1969. The down spouts have encroached the Guess Property since at least 1991. The shed has encroached the Guess Property since 1993 or 1994. All of this use continued until 2016 when this dispute arose which is a period in excess of 21 years.

16. Finally, the use of the Guess Property by the owners of the Holmes Property was adverse and hostile. There is no question that the use of the Disputed Strip by the owners of the Holmes Property was inconsistent with the property rights of the owners of the Guess Property.

{¶ 15} In reviewing the transcript of the trial, we find the magistrate's sixty-two findings of fact and thirty-two conclusions of law to be supported by the record. T. at 26-27, 32-36, 39-40, 42-43, 46, 101-112, 123-125, 137-140, 147, 163-164. Appellees have demonstrated the elements of adverse possession pertaining to the disputed strip by clear and convincing evidence.

{¶ 16} Appellants further argue appellees failed "to describe the boundaries needed to sustain its claim" and cites R.C. 315.251 in support. Appellants' Brief at 20. R.C. 315.251(A) states the following:

If a deed conveying title to real property is presented to the county auditor for transfer, and the deed contains a legal description for land that is a cut-up or split of the grantor's one or more existing parcels of land as shown in the county auditor's records, or if the legal description of the land conveyed in the deed is different from the legal description shown in the prior deed to the grantor, a boundary survey plat in conformity with the new description shall be submitted with the deed. The survey plat and description shall satisfy the minimum standards for boundary surveys promulgated by the board of registration for professional engineers and

surveyors pursuant to Chapter 4733. of the Revised Code. If, in the opinion of the county engineer, the survey plat and description satisfy those standards, the county auditor shall accept the deed for transfer and a copy of the survey plat shall be filed in the county engineer's survey file for public inspection.

{¶ 17} In denying appellants' objection on the issue, the trial court found the following in its judgment entry filed September 20, 2017:

Defendants also claim that Plaintiffs were required to present evidence of a metes and bounds surveyed description and plat at trial in order to succeed on their adverse possession claim. The Court notes that no Ohio case has required such evidence as part of the proof of an adverse possession claim, and Defendants have not provided any authority in support of their argument that such is a necessity. The only case cited by Defendants in support of such a contention, [is] *Franklin v. Massillon Holmes [sic] II, LLC,* 184 Ohio App.3d 455, 2009-Ohio-5487, 921 N.E.2d 314 (5th Dist.). In that case, the trial court concluded-among other things-that the plaintiff's adverse possession claim must fail because the plaintiff's reference to landmarks such as fences and shrubs may not sufficiently identify the boundaries. *Id.* at ¶12. However, the Fifth District Court of Appeals actually reversed the trial court's determination, finding it was in error. *Id.* at ¶34. The requirement proposed by Defendants would ultimately prove unworkable. For instance, in this case, the Court could have

determined that the new boundary should exist in any number of places-at the roofline, at the edge of the planter, at the edge of the downspout, at the edge of the shed-rendering it impossible to obtain a proposed plat in advance of a judicial determination as to the proper boundary line.

The Magistrate's Decision found the existence of the boundary based on the edge of a physical landmark-a fence-and a monument-the bent post. It is axiomatic that stakes and monuments are "of prime importance" in establishing boundaries, and may even control over metes and bounds descriptions in certain cases. *See Broadsword v. Kauer,* 161 Ohio St. 524, 533-534, 120 N.E.2d 111 (1954). The Magistrate's Decision provides sufficient guidance from which a boundary may be established. From this decision, Plaintiffs may obtain a survey plat and description of the type contemplated by R.C. 315.251.

{¶ 18} We concur with the trial court's analysis.

{¶ 19} Upon review, we find the trial court did not err in finding appellees established their claim of adverse possession by clear and convincing evidence, and was not required, based upon the facts in this case, to have a metes and bounds surveyed description and plat to succeed on their adverse possession claim.

{¶ 20} Assignments of Error I, II, and III are denied.

{¶ 21} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Wise, John, P.J. and

Gwin, J. concur.


EEW/db 614